FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 10 2008

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHERIE HOWARD                                                    PLAINTIFF

4:08CV003613 GTE

v.                          CASE NO.

This case assigned to District Judge _____
and to Magistrate Judge _____

LARRY NORRIS, DIRECTOR OF THE ARKANSAS                     DEFENDANTS
DEPARTMENT OF CORRECTIONS, DOCTOR MAX MOBLEY;
CAPTAIN FNU LOFTUS; CORRECTIONAL MEDICAL SERVICES;
DR. JASON GATES, O.D.; DR. DONALD ANDERSON, M.D.;
MARY A. MATHEWS, LPN;CHRIS LOE, LPN; K. PETTIT, LPN;
JANET TINER, R.N.; P. JOHNSON, RN; JOHN DOES 1-10 said designation
Representing prison employees whose identity(ies) are unknown who
made decision which violated Cherie Howard's rights; JOHN DOES 11-50
said designation representing the appropriate corporate entity(ies) that
employed any named defendant herein from October 10, 2006 through
October 13, 2006; JOHN DOES 51-75, said designation representing
those individuals and/or entities providing medical, nursing, or health care to
Cherie Howard from October 10, 2005 through October 13, 2005 who
failed to possess and/or apply the degree of skill and learning ordinarily
possessed and used by members of their profession in good standing,
engaged in the same type of service or specialty in the locality they practiced
or a similar locality while rendering said service to Cherie Howard, and/or
their employees, agents, and employers; and the Estate of any Defendant
who predeceases service of the Complaint and Summons; JOHN DOES 76
through 100, said designation representing all general partners or individuals
and/or entities having an interest subjecting them/it to liability as a
separate judicial entity for the acts of negligence and/or fault alleged herein;
and JOHN DOES 101 through 150, said designation representing any management
Corporation/Company, or any other entity which by contract entered into a
Contractual relationship whose purpose was to oversee, manage,
or administrate any Defendant in order to foster, obtain, or secure better patient care

COMPLAINT

Comes now the Plaintiff, Cherie Howard (Howard), by and through her attorney, the Morris

1

W. Thompson Law Firm, P.A., and as for her Complaint against the Defendants, states and alleges as follows:

## INTRODUCTION

This is an action to secure rights, privileges and immunities guaranteed by the Eighth Amendment to the United States Constitution brought under 42 U.S.C. § 1983 as well as 28 U.S.C. §§ 2201 and 2202. Plaintiff seeks redress against the Arkansas Department of Corrections (ADC), Correctional Medical Services, Inc. (CMS) and defendants, Larry Norris (Norris), Max Mobley (Mobley), Dr. Donald Anderson, M.D. (Anderson), Mary A. Mathews (Mathews), Chris Loe, LPN (Loe), K. Pettit, LPN (Pettit), P. Johnson, RN, (Johnson), and Janet Tiner, RN (Tiner) individually and in their official capacities as employees of the ADC and CMS, respectively. Norris, Mobley and Loftus are being sued in their individual and official capacities as policy and decision makers for the ADC and CMS for their failure to adequately train and supervise their subordinates, and for creating and supporting customs and policies resulting in indifference to the rights of citizens, and for acts and omissions by such officers which were deliberately indifferent to Plaintiff's constitutional rights to life and liberty amounting to a deprivation thereof; the John Doe guards of the Arkansas Department of Corrections in their individual and official capacities for acts and omissions by such officers which were deliberately indifferent to Howard's constitutional rights to life and liberty amounting to a deprivation thereof. Plaintiff also brings suit against Correctional Medical Services (CMS), for its policies and customs which caused and/or contributed to Plaintiff's medical conditions, thus depriving her of her rights and privileges secured and protected by the U.S. and Arkansas Constitutions.

Plaintiff also seeks relief in this court for the pendant state tort claims of outrage and medical negligence pursuant to the Arkansas Civil Rights Act of 1993, Arkansas Code Annotated § 16-123-

2

101 et seg. Defendants, Anderson, Gates, and the John Doe doctors as well as Tiner, Johnson, Pettit, Loe and the John Doe nurses are sued individually for the pendant state tort claims of outrage and medical and nursing negligence.

## JURISDICTION

The jurisdiction of this Court is invoked pursuant to the authority of 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983 to redress violations of Plaintiff's constitutional rights guaranteed by the 8th Amendment of the United States Constitution as applied by the 14th amendments to the State of Arkansas; and 28 U.S.C. §§ 2201 and 2202 for declaratory judgment and injunctive relief.

Additionally, pursuant to its plenary power this court has jurisdiction over the pendant state tort claims.

## PARTIES

1.      Plaintiff, Cherie Howard (Howard), is a citizen of the United States and a resident of Little Rock, Pulaski County, Arkansas.

2.      Norris, the Director of the Arkansas Department of Corrections (ADC), is being sued in his individual and official capacities. As ADC Director, Norris has decision making authority of such a nature that his decisions establish policy for the ADC. He is sued for his decisions and actions which manifested in ADC and/or CMS proper policies, customs, practices, rules, regulations, standards, procedures, manifesting deliberate indifference to inmates sustaining serious eye injuries and to ensure that inmates who sustained serious eye injuries received adequate medial care in response to the serious medical need. Said decisions and actions resulted in training and supervision which was inadequate to protect inmates from enduring extreme pain and suffering and mental anguish and against the loss of said organ as a result of said injury. Said failures were in deliberate

3

indifference to the serious medical needs of Cherie Howard amounting to cruel and unusual punishment.

3.    Mobley, Medical Director for the Arkansas Department of Corrections, is being sued in his individual and official capacities. As Medical Director, Mobley has decision making authority of such a nature that his decisions establish policy for the ADC. He is sued for his decisions and actions which failed to ensure for the ADC and/or CMS that proper policies, customs, practices, rules, regulations, standards, procedures, training and supervision were implemented to protect inmates from sustaining eye injuries and to protect inmates who sustained eye injuries from enduring extreme pain and suffering and mental anguish and against the loss of said organ as a result of said injury. Said failures were in deliberate indifference to the serious medical needs of Cherie Howard amounting to cruel and unusual punishment and medical negligence.

4.    Upon information and belief, Loftus is an employee of the ADC and a supervisor at the McPherson Facility. Captain Loftus is being sued in her individual and official capacities for her deliberate indifference to Howard's serious physical injury, her mental distress and denying her timely and appropriate medical attention which would have lessened her pain and suffering, mental anguish and prevented the loss of Howard's eye. Loftus has decision making authority and said failures were in deliberate indifference to the serious medical needs of Cherie Howard amounting to cruel and unusual punishment.

5.    John Does 1 through 10 are the prison employees and officials who made the decision that Howard and the other inmates were not to receive safety goggles when they reported to the field squad that morning and mornings before. These persons were aware that work of this nature posed a real and immediate risk to the inmates' health and welfare, yet deliberately and customarily chose to order the inmates to work with out the needed and necessary safety equipment. These persons are

4

also responsible for the decision not to immediately return Howard to the infirmary but keep her out on the grounds working for no less than 2 additional hours. These persons are sued in both their individual and official capacities. Said decision and/or inactions were in deliberate indifference to Cherie Howard's serious medical needs.

6.      CMS, pursuant to a contract with the ADC is authorized to deliver comprehensive medical, dental services and mental health medication for all incarcerated individuals housed and detained in ADC operated facilities, which includes the McPherson Unit in Newport, Arkansas. Under the authority of that contract, CMS, a private corporation, carries out a traditional government function and thereby acts under color of state law. CMS' policies, customs, practices, rules, regulations, standards, violated Cherie Howard's Eighth Amendment right to be free from cruel and unusual punishment. In addition thereto, CMS is being sued for medical negligence for failure to meet the acceptable standards of medical and nursing care.

7.      The John Does medical care providers are being sued in their individual and official capacities for their refusing medical attention and care to Howard's serious medical needs and for their actions which did not meet the expected standard of medical and nursing care as well as for deliberate indifference. The foregoing violated Cherie Howard's rights protected by the Eighth and Fourteenth Amendment.

8.      Gates, at all times relevant, holds a doctorate in optometry, licensed to practice optometry by the State of Arkansas. Gates holds himself out to serve the public in the area of optometry and is engaged in the practice of optometry at Gates Eye Care Center, Inc., 200 North Harwood, in the City of Newport, Arkansas. Furthermore, upon information and belief, he is engaged by CMS to provide optometric services for the McPherson Unit. Gates is sued in both his individual and official capacities for his refusal to provide proper medical care for Howard's serious

medical needs which amounts to deliberate indifference in violation of her rights; as, well as for medical negligence for failure to meet the applicable optometric standard of care.

9.     Anderson, at all times relevant, is a physician licensed to practice medicine by the State of Arkansas.  Anderson holds himself out to serve the public in the areas of Family and Urgent care. Anderson maintains his private practice at 2805 Lynn Street, Newport, AR 72112. Furthermore, upon information and belief, he is engaged by CMS to serve as the staff physician for the McPherson Facility in the City of Newport, Arkansas. Anderson is sued in both his individual and official capacities for his refusal to provide proper medical care for Howard's serious medical needs which amounts to deliberate indifference in violation of her rights; as well as for medical negligence for failure to meet the applicable medical standard of care

10.     Tiner, at all times relevant, is a Registered Nurse licensed to practice nursing by the State of Arkansas, and is an employee of CMS at the McPherson Facility, in the City of Newport, Arkansas. Tiner is being sued in both her individual and official capacities for her refusal to provide proper medical care for Howard's serious medical needs which amounts to deliberate indifference in violation of her rights; as well as for negligence for failure to meet the applicable standards of nursing care.

11.     Mathews, at all times relevant, is a Registered Nurse licensed to practice nursing by the State of Arkansas, and is an employee of CMS at the McPherson Facility, in the City of Newport, Arkansas. Mathews is being sued in both her individual and official capacities for her refusal to provide proper medical care for Howard's serious medical needs which amounts to deliberate indifference in violation of her rights; as well as negligence for failure to meet the applicable standards of nursing care as well as for negligence for failure to meet the applicable standards of nursing care.

6

12.     Loe, at all times relevant, is a Licensed Practical Nurse licensed to practice nursing by the State of Arkansas and is an employee of CMS at the McPherson Facility, in the City of Newport, Arkansas. Loe is being sued in both her individual and official capacities for her refusal to provide proper medical care for Howard's serious medical needs which amounts to deliberate indifference in violation of her rights; as well as for negligence for failure to meet the applicable standards of nursing care.

13.     Pettit at all times relevant, is a Licensed Practical Nurse licensed to practice nursing by the State of Arkansas and is an employee of CMS at the McPherson Facility, in the City of Newport, Arkansas. Pettit is being sued in both her individual and official capacities for her refusal to provide proper medical care for Howard's serious medical needs which amounts to deliberate indifference in violation of her rights; as well as for negligence for failure to meet the applicable standards of nursing care.

## FACTS

14.     On October 11, 2006, Howard was an inmate of the Arkansas Department of Corrections (ADC) housed at the McPherson Unit in Newport, Arkansas.

15.     On that day, she was working her assigned duties on the field squad using the provided garden implement called a hoe to chop unwanted weeds and grasses.

16.     The implement is designed to be grasped with both hands and swung forward to the ground with sufficient force to penetrate the ground and chop the growth off at or below he surface of the ground. Typically the user is bent forward at the waist and slightly at the knees such that the users face is moving toward the ground as the implement strikes.

17.     Frequently, the implement strikes harden ground, rocks and other hard material causing fragments of rocks, metal or particles of earth, sand, etc. to fly up into the air forcefully

7

striking the user's body and face.

18.     Contrary to mandatory safety procedures, Howard was not provided goggles or other safety equipment to protect her from such incidents as described in paragraphs 14 that commonly occur when work of this nature is being performed.

19.     At approximately 9 am, Howard was using the implement as designed and described in paragraph 15 above. During the course of this work, as she struck the ground an object rebounded striking her right eye. The projectile hit with such force, it penetrated and was lodged in the interior of her eye.

20.     Howard felt immediate pain and could not continue to work. She complained to Sgt. McLain, the guard overseeing the field squad, that she had been hit in the eye by a projectile. Lt. Deen gave her a bottle of water to wash out her eye. He took her off line but required her to pick grass by hand from the garden and stay out with the crew until 11:00, the time for her to return to the Unit.

21.     Upon return to the McPherson Unit at 11:30, she requested medical attention. Howard was allowed to go to the infirmary where she was seen by the LPN on duty, Mathews.

22.     Mathews rinsed Howard's eye with a saline or dacriose solution, gave her Ibuprofen and instructed her to return to sick call in 24 hours for re-check or as instructed by physician. A doctor was not called or consulted.

23.     By 1300 Howard's condition had deteriorated until she could no longer see clearly out the injured eye. She was seeing double and everything seemed to be seen through a veil of red. The pain was excruciating making her nauseated and causing her to throw up.

24.     The pain progressively worsened at approximately 1400 Howard asked the day time duty officer to be allowed to go to the infirmary. She was denied and told she'd have to put in a sick

8

slip. Howard, however, was in too much pain to see or think clearly. Other inmates in her area wrote out sick slips for her and gave them to the guards.

25.     Despite her obvious extreme distress, the guards did nothing to see to it that she was given timely medical attention.

26.     Finally, at approximately 1830, the guards in her pod called the infirmary demanding that Howard be seen. The LPN on duty, Loe, denied the request telling them Howard had been seen at 1140 and she was not scheduled for a follow-up until 24 hours had passed; that she would have to "drop a sick call like everybody else."

27.     At approximately 1900, out of desperation and driven by pain Howard rushed out of her pod into the hallway hollering and pleading for medical attention and relief from the pain. Howard hoped a disturbance of this type would draw the attention of those with decision making authority and secure the medical help she needed.

28.     As per policy, the guards made an emergency "responder call" which brought Loftus, Loe and Pettit, rushing to the scene of the disturbance to provide back up assistance. They found Howard in the hallway, visibly upset and crying. Instead of providing Howard the help she so desperately sought and needed, Loftus threatened throw her in "the hole" if she did not shut up and return to her cell. Loe and Pettit told the guards and Howard that as she had been seen earlier that day, she was scheduled for follow-up for 24 hours. Loe and Pettit again refused to administer medical care.

29.     To relieve her pain, Howard took all of the Ibuprofen she had been given earlier that day. The other inmates tended to her the best they could. They kept wet towels on her eye throughout the night and some who had Tylenol gave them to her in an attempt to relieve her pain.

30.     The next morning, October 12, 2006, at approximately 0700, Howard awoke due to

the unrelenting pain to discover the right side of her face was grotesquely misshapen from the swelling around her eye. The right side of her face was swollen and extremely painful. Her eye was swollen shut with purulent bloody drainage seeping out. The pus and blood seeping out had stuck the towel to the side of her face.

31.     Again the medical staff refused to see her until approximately 10:00 when Captain Faust arrived to conduct head count. When Captain Faust saw Howard's deformed and misshapen appearance, she overrode medical and had Howard taken immediately to the infirmary.

32.     At the infirmary, Tiner called Dr. Anderson who instructed Tiner to administer 10mg Nubain and washed the eye with an irrigation solution.

33.     For the next three hours or more matters progressively worsened. The pain was unrelenting and her eye and her vision deteriorated. At approximately 1300 hours, she was transported from McPherson to Gates' office in Newport, Arkansas for examination and treatment. Gates, however, is not a medical doctor, but rather holds a doctorate in the field of optometry. At this point, over 28 hours had lapsed post the injury and Howard had yet to be examined by a physician.

34.     Gates misdiagnosed the problem, diagnosing it as hyphema with corneal abrasion and possible retinal tear. He prescribed eye drops and a follow-up with an ophthalmologist, Dr. McNair, M.D. in a week.

35.     Upon transport back to the Unit infirmary, Howard was seen by Johnson the RN on duty who administered Ultram 50mg, 2tid to Howard for the pain.

36.     Howard was kept in the infirmary that night for observation. However, she was in extreme and excruciating pain the entire night to the extent she could not sleep. She cried and hollered from pain and threw up the entire night.

37.     The following morning, the Director of Nursing called Anderson regarding the

10

progressive deterioration of Howard's condition. Anderson then consulted Dr. McNair, an

ophthalmologist, who recommended Howard be transported to Harris Hospital ER for examination

and treatment.

38.    Despite all of the foregoing, she was not seen by a physician until day three of her

injury, October 13, 2006 at approximately 1530. At Harris Hospital, a CT scan revealed a retained

foreign body embedded in Howard's eye. Harris Hospital then arranged for Howard to be transferred

to UAMS Jones Eye Center in Little Rock.

39.    Finally at approximately 1900, upon her arrival at UAMS Jones Eye Center in Little

Rock, Arkansas, some 58 hours or so after the projectile embedded in her eye Howard was examined

by a physician. By the time Howard arrived at Jones Eye Center, the infection from the wound in her

eye had worsened to the point the eye could not be saved and it had to be surgically removed.

40.    Howard was hospitalized at UAMS from October 13, 2006 until her release on or

about October 20, 2006 to ADC's hospital facility, the Diagnostic Unit in Pine Bluff, Arkansas.

41.    Howard remained at the Pine Bluff Diagnostic Unit for approximately two (2) weeks

where upon her release, she was returned to the McPherson Unit in Newport, Arkansas.

42.    Due to the loss of her eye, Howard has suffered and continues to suffer bouts of

extreme depression, loss of self esteem and confidence in her appearance as a young woman.

43.    As a result of the loss of her eye, Howard has suffered a loss of depth perception and

visual functionality which adversely affects her daily living and employability, thus suffering a loss

of earnings and earning capacity. Howard's damages are more fully enumerated in paragraph 58,

infra.

44.    Howard remained at the McPherson Unit until January 4, 2007, Howard when she

was released.

11

45.     ADC Administrative Directive 97-08 § IV(E) provides the steps that make the grievance procedures accessible to an aggrieved inmate. It provides only 15 days within which the inmate may grieve the offending conduct. Howard in that she was in the hospitals, UAMS and the Diagnostic Unit, still being treated, heavily medicated and away from her unit, McPherson during the 15 days. The grievance procedures provide no exceptions for circumstances such as these and consequently, denied Howard the ability to grieve the incident. As a result of this failure, the procedures were not accessible to Howard up to and when the time period lapsed.

46.     Furthermore, as she was in the hospitals, still being treated, heavily sedated and medicated, away from her unit she was mentally and physically incapable of proceeding with any grievance procedure during the 15 day window.

47.     As a result of the foregoing, she is excused from exhausting her administrative remedies.

## FEDERAL CIVIL RIGHTS VIOLATIONS
## UNDER 42 U.S.C. SECTION 1983

48.     Howard specifically incorporates and adopts by reference the allegations contained in paragraphs one 1 through 47 as if stated herein word for word.

49.     The above recited acts and omissions of the defendants, while each was acting under color of authority and in his or her individual and official capacities, respectively constitute a deprivation of Howard's constitutional rights as guaranteed by the 8th and 14th Amendments to the United States Constitution as well as those guaranteed by the Arkansas Civil Rights Act. Such acts of defendants while acting within the color of their authority are sufficient to invoke an action under 42 U.S.C. § 1983 against them for which Howard seeks damages as set forth infra.

50.     The acts, customs and policies of Norris, Mobley, Loftus and the John Doe officers as set forth in the preceding paragraphs were willful, wanton and committed in reckless disregard of the natural consequences, evidencing a deliberate indifference to Howard's constitutional rights. Said acts, customs and policies proximately caused Howard to be subjected to the misconduct of such officers, as complained of herein, resulting in injury therefrom. For such customs, policies and procedures which resulted in deliberate indifference to Howard's rights and injury therefrom, Howard seeks damages as set forth, infra.

51.     The acts, customs and policies of Norris, Mobley, Loftus and the John Doe officers were deliberately indifferent to Howard's rights and privileges secured by the Arkansas constitution the Amendments thereto and the Arkansas Civil Rights Act.

52.     CMS's actions resulting in the violation of Howard's rights were done in deliberate indifference to her rights protected by the protected by the Arkansas and U.S. Constitution. These actions, among other things, were the result of CMS' policies, rules, regulations, practices, and customs which resulted in an abdication of its duty to:

a)      train and/or supervise its employees responsible to respond to and provide care for medical needs of those over whose medical care of which they had charge.

b)      provide adequate staff supervision;

c)      identify inadequate staff performance;

d)      provide appropriate assessment, diagnosis, and interventions through its staff;
e)      prevent harm and/or loss of Howard's eye due to a retained foreign object, acute corneal ulceration and infection;

f)      adhere to applicable standards and regulations by not providing adequate medical facilities, treatment, personnel and/or referral;

g)      to train nurses and staff with the proper policies, protocols and procedures for caring for Howard and persons with severe eye injuries;

13

h)      otherwise adopt and/or follow policies and procedures with could have been reasonably expected to insure proper care and treatment.

## DECLATORY JUDGMENT AND INJUNCTION
## UNDER 28 U.S.C. SECTIONS 2201 AND 2202

53.      Howard specifically incorporates and adopts by reference the allegations contained in paragraphs 1 through 52 as if stated herein word for word.

54.      Howard seeks a declaratory judgment that the actions of the defendants violated the Eight Amendment and 42 U.S.C. § 1983; and seek an injunction against the ADC and CMS from future violations of this kind and type.


## MEDICAL NEGLIGENCE

55.      Howard specifically incorporates and adopts by reference the allegations contained in paragraphs one 1 through 54 as if stated herein word for word.

56.      To the extent any medical and/or nursing care providers are found to have acted under color of state law and thus are state actors, they are not entitled to sovereign immunity pursuant to the Arkansas State Constitution to the extent they carry liability insurance.

57.      The defendants failed to possess and/or apply the degree of skill and learning ordinarily possessed and used by members of their profession in good standing, engaged in the same type of service or specialty in the location they practiced, or a similar location, while rendering said service to Cherie Howard on or about October 11, 2006 up to and through October 13, 2006.

58.      Anderson and Mobley and the John Doe doctors were negligent in failing to adequately train and supervise and direct CMS staff with regard to Howard's treatment and care.

59.      In addition to all other acts of negligence and or fault alleged herein, Anderson and

14

Gates jointly and severally are liable in the following particulars:

      a)      In failing to properly diagnose, treat and manage Howard's vision threatening condition;

      b)      In failing to take the proper steps in determining the true and accurate nature of Howard's condition;

      c)      In failing to use the pertinent skills and knowledge expected of physicians, nurses, hospitals, medical facilities, and other healthcare personnel under like circumstances;

      d)      In failing to properly attend, inspect, evaluate, and treat Howard;

      e)      In failing to use reasonable care under the existing circumstances for Howard's attendant examination, evaluation, and treatment;

      f)      In failing to use diligence to ascertain all available facts and reports and collect data essential for the proper diagnosis and treatment; and,

      g)      In otherwise failing to act as a reasonable, prudent, and competent physician, nurse, hospital, and other healthcare personnel under like or similar circumstances in Jackson County, Arkansas or in similar localities.

      h)      Failed to refer Howard to the appropriate level of care and obtain consultation with appropriate specialist(s) in ophthalmology.

      i)      Failed to recognize, diagnose and treat an acute corneal ulceration and vision threatening condition requiring specialty intervention by an Ophthalmologist.

      j)      Failed to properly examine Howard and to maintain an accurate record of examinations, diagnosis and treatment and attempted to conceal these failures by altering the record at a later time.

      k)      Failed to follow established standards of practice, guidelines, and policies and procedures in the examination, evaluation and treatment of Howard.

      l)      Failing to have Howard admitted on October 12, 2006 for further observation and radiographic examination in consideration of her clinical presentation.

      m)      Failed to properly diagnose the symptoms for a retained foreign body in her right eye.

      60.      Tiner, Loe, Johnson, Mathews, Pettit and the John Doe nurses were negligent in the following particulars, among other things:

15

a)      Failed to notify the physician(s) of recurrent and sever pain in a timely manner;

b)      Failed to notify physician(s) of changes in condition;

c)      Failed to notify nurses of the next level of responsibility when changes in condition were observed;

d)      Failed to appropriately apply the nursing process through assessment, diagnosis, planning, interventions and evaluation to reduce risk, prevent harm and promote health;

e)      Failed to adequately assess and investigate the cause of Howard's pain and other symptoms;

f)      Failed to identify and provide appropriate interventions when changes in condition warranted;

g)      Failed to follow established standards of practice, guidelines, protocols and policies and procedures in the examination, evaluation and treatment of Howard.

## OUTRAGE

61.     Howard specifically incorporates and adopts by reference the allegations contained in paragraphs one 1 through 60 as if stated herein word for word.

62.     In addition to Anderson's refusal and failure to come to the infirmary to examine Howard, and maintain an accurate record of examinations, diagnosis and treatment, Anderson and thereby CMS attempted to conceal these failures by altering the record at a later time.

63.     The intentional and unnecessary acts and omissions complained of herein constitute the tort of outrage pursuant to Arkansas law, in that the acts were willful, wanton and committed with reckless disregard of the natural and foreseeable consequences of such acts. Such conduct was extreme and outrageous to such a degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized society. As a natural and foreseeable result of said acts of defendants, Howard has suffered severe emotional distress.

64.     Howard reserves the right to amend and plead further as facts are revealed upon

16

discovery.

## DAMAGES

65.    For the acts, omissions, customs and policies complained of herein, Howard seeks the

following relief:

        a.    Damages for violation of her constitutional rights;

        b.    Damages for the intentional acts of outrage, and denial of adequate medical attention;

        c.    Damages for emotional distress, past and future;

        d.    Damages for pain, suffering, past and future;

        e.    For permanent physical injury, past and future;

        f.    Damages for loss wages and loss of earning capacities, past and future;

        g.    Damages for the loss of her eye;

        h.    Punitive damages; and

        i.    Reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, Cherie Howard, requests a judgment against Defendants, jointly

and severally, for violation of her rights protected by the United States and Arkansas Constitutions;

for declaratory judgment and injunction prohibiting the acts complained of herein; for the pendant

state tort claims, to wit: violation of the Arkansas Civil Rights Act, outrage, and medical negligence;

for punitive damages; for reasonable attorney's fees and costs; and for all other just and proper relief

to which she may be entitled.

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted for
Cherie Howard, plaintiff herein

Morris W. Thompson, ABN#80145

Morris W. Thompson Law Firm, P.A.
P. O. Box 662
Little Rock, AR  72203
(501) 661-8100
(501) 372-4101
E-mail: mwthompsonlaw@sbcglobal.net

18

**VERIFICATION**

STATE OF ARKANSAS      )
                       )SS
COUNTY OF PULASKI      )

Comes Cherie Howard, of lawful age, being first duly sworn on her oath says as follows:

That she is the Plaintiff in the above entitled action, and that she has read the contents of the foregoing pleadings, and that the contents therein contained are true, as affiant knows it, informed or believes.

_____
Cherie Howard

SUBSCRIBED AND SWORN to before me, a Notary Public, on this the 8th day of October 2008.

_____
Notary Public

My Commission Expires:

_____

KARLA E. RAMOS
Notary Public - Notary Seal
STATE OF ARKANSAS
Pulaski County – Comm.#12361151
My Commission Expires July 2, 2017

17